

**U.S. Department of Justice**

*United States Attorney*
*District of Guam*

---

Sirena Plaza, Suite 500          (671) 472-7332
108 Hernan Cortez Avenue   FAX:  (671) 472-7334
Hagatna, Guam 96910

March 3, 2008

Stephanie G. Flores
Suite 202, Quan Bldg.
324 W. Soledad Ave.
Hagatna, Guam 96910

Re   <u>United States v. Francisco S.N. Kawamoto, Cr. No. 08-00004-6</u>

Dear Ms. Flores,

    I am enclosing the interview of Sang Ho Kim (# 15) made when he was arrested February 25, 2008. Kim was one of the people to whom your client issued a driver's license. It is marked for reference as  07INVEST00460-461.

    Sincerely,

    LEONARDO M. RAPADAS
    United States Attorney
    Districts of Guam and NMI

By:

    KARON V. JOHNSON
    Assistant U.S. Attorney

RECEIVED
MAR 03 2008

- 1 -

FD-302 (Rev. 10-6-95)

#15
Ɔ Kawamoto

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription     02/25/2008

SANG HO KIM, Korean male, born February 8, 1980, Social Security Account Number 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, Bordallo Apartments, 420 Farenholt Avenue, Unit 3, Tamuning, Guam, was interviewed at his place of employment, DOLPHIN MARINE DIVING, Piti, Guam. After being advised of the identity of the interviewing agents, the purpose of the interview, and of his constitutional rights (Korean language), KIM provided the following information:

KIM obtained a Guam Driver's License about 3 years ago from a Korean female, name unknown. He paid the Korean female $300 for the license. He paid the $300 before he took the written driver's license exam, at the University of Guam. He met the Korean female at CENTURY BOWLING, Tamuning, Guam. He thought she worked at Guam Department of Motor Vehicles. He asked her how he could obtain a Guam Driver's License she told him that he did not need to take a driving test to obtain the driver's license because he had a Korean driver's license. KIM provided SA Klocke with the Guam Driver's License, which SA Klocke placed in a 1-a envelope.

Prior to his employment at DOLPHIN MARINE DIVING, he was employed at BEVERLY HILLS GIFT SHOP, located across from SAINT JOHN'S SCHOOL in Tamuning, Guam.

He first advised that he lived by himself at 420 Farenholt, Tamuning, Guam and then advised he was married to a Korean female and he resides with his wife, A REUM SONG at 420 Farenholt, Tamuning. SONG is a student at the University of Guam.

He came to Guam on a Tourist Visa. He is trying to obtain United States Citizenship. He was married about 2 years ago, at the courthouse in Guam. He has been working for the past eighteen months utilizing his SSAN.

SA Klocke provided KIM with a copy of his Application for a Guam Driver's License. KIM signed the form, but did not fill out the information on the form. He attended Guam Community College for about 8 months and was a student when he applied for a driver's license. In 2005, when he applied for the driver's license, his English was not as good as it is today. He never resided at Airport Apartments. He was resided at P.O. Box 1097, Tamuning, Guam in 2005.

---

Investigation on   02/25/2008   at   Piti, Guam

File #   194A-HN-18383                                    Date dictated   02/25/2008
         SA Perryn T. Collier
by   SA Kenneth R. Klocke

07INVEST00460

194A-HN-18383

Continuation of FD-302 of ___Sang Ho Kim_____ , On 02/25/2008 , Page ___2___

      He obtained a driver's license because he needed one to drive.  He owns 2 vehicles.

      His wife has been a United States citizen for about 3 or 4 years.  She is twenty-two years old.  It was her first marriage and they have no children.  Her parents reside on Guam.

      GARY HALL was his immigration attorney and his current immigration attorney is Mark Kondas.

      His wife's cell phone number is (671) 688-0913.  KIM was allowed to telephonically contact MR PARK, telephone number (671) 688-5810.

      KIM was provided a Consular Notification, in Korean, which he signed.

      KIM voluntarily left his personal belongings at DOLPHIN MARINE DIVING.  First Name Unknown LEE, Owner/Manager,  was traveling to DOLPHIN MARINE DIVING to obtain the belongings.  KIM elected to depart DOLPHIN MARINE DIVING prior to KIM's arrival at DOLPHIN MARINE DIVING.  The items were left in the custody of a co-worker.

07INVEST00461

FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___06/12/2007___

     JI EON LEE, date of birth October 19, 1969, social security account number 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, Alien number A096856164, residing at #121 Alupang Cove, 241 Condo Lane, Tamuning, Guam, 96931, South Korean National, was interviewed by Federal Bureau of Investigation, Honolulu Division (FBI), Special Agents (SAs) Jeffery Pfeiffer and Darin M. Didier. LEE was arrested on June 11, 2007, by SAs Pfeiffer and Didier pursuant to an arrest warrant issued by the District of Hawaii for violations of Title 18, USC, Sections 2 and 1028(a)(7) on June 7, 2007, based on an investigation performed by the Guam Resident Agency (RA) out of the Honolulu Division. A separate FD-302 memorializing the arrest and subsequent procedures has been included in the substantive case file. At approximately 6:40 p.m. on June 11, 2007, SA Pfeiffer provided LEE with a copy of the Advice of Rights Form (AOR) written in Korean, LEE's native language. SA Pfeiffer had LEE read the AOR aloud to Customs and Border Protection Agent Myke Chung, a Korean speaker who translated LEE's reading of the AOR form and acted as the translator for the subsequent interview. LEE read the entire form and stated she understood her rights. LEE signed the form and agreed to be interviewed. After being advised of the identities of the interviewing agents and the nature of the interview, LEE provided the following information:

     LEE, a housewife with three kids, traveled from South Korea to Guam numerous times to visit and determine whether it was a suitable place for her family to live. During one of the trips, LEE's ex-husband, who lives in South Korea, told LEE that she would need to get a Guam driver's license if she were to move to Guam. LEE's ex-husband had an acquaintance that knew a woman that could arrange for LEE to get her driver's license. LEE could not remember the name of her ex-husband's acquaintance. The woman that could help LEE get her license was "Ms. EUNYONG (ph)." First Name Unknown (FNU) EUNYONG was a tall, big, Korean woman that had lived in Guam for many years. EUNYONG was born around 1969, although LEE stated EUNYONG looked much older than LEE. EUNYONG had short, black hair. EUNYONG told LEE several times that having EUNYONG assist was legal because LEE had a "clean" passport and Korean driver's license. EUNYONG told LEE that LEE did not need a social security number (SSAN) in order to get the license. EUNYONG was well known among Guam's Korean community and helped out many Koreans. Korean neighbors of LEE said the process was legitimate.

---

Investigation on ___06/11/2007___ at ___Honolulu, Hawaii___

File # 194A-HN-18383 - 558      Date dictated ___Not Dictated___

by SA Jeffery Pfeiffer
   SA Darin M. Didier:dmd

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

194A-HN-18383

Continuation of FD-302 of _____ JI EON LEE _____ , On 06/11/2007 , Page 2

     During one of the family's trips to Guam before LEE moved there, LEE procured a Guam Driver's License in 2005 with the help of EUNYONG. LEE's ex-husband was on the trip when LEE got her license. LEE's ex-husband contacted either the acquaintance or EUNYONG about getting LEE a license. LEE and her ex-husband met EUNYONG at a specified location and then followed EUNYONG to the Department of Motor Vehicles (DMV) for LEE's drivers test. LEE did not remember who her ex-husband contacted, nor where the specified location was. The meeting described above was the first time LEE had met EUNYONG. LEE went into the DMV with EUNYONG to fill out the paperwork. They went to the teller station in the far left corner of the DMV and LEE began filling out the form in front of the DMV employee at the station. There was no line that day at the DMV and LEE could not remember if EUNYONG specifically chose that particular teller station because she was not paying attention. LEE could not remember if the form was an I-10 form. LEE filled out the name and address portion of the form before EUNYONG became impatient with LEE due to LEE's lack of knowledge of the English language. EUNYONG told LEE she would finish the form for LEE and was "rude" about it. After the form was finished, EUNYONG handed the form to the DMV employee at the teller station. LEE stated the DMV employee and EUNYONG seemed to know each other very well and EUNYONG seemed to know many DMV employees. The DMV employee that took the form wasn't a Korean or American woman, but might have been from Guam. The DMV employee was not young and LEE estimated her to be in her late 40's. LEE believed that because EUNYONG was well known at the DMV, the process of getting her license would be quicker. LEE stated she did not know whether or not EUNYONG worked for the DMV.

     Later during the same trip to Guam, LEE went to the University of Guam to take the written portion of the drivers test. The drivers test was available in Korean, as well as Japanese and other languages. EUNYONG had given LEE a study guide to prepare LEE for the drivers test. While LEE took the written test, EUNYONG walked around the room where the test was administered and acted as an assistant for LEE. EUNYONG would look at the answers LEE marked and tell LEE in Korean if an answer was wrong and what the correct answer was. LEE noticed other "assistants" walking around and helping other test-takers. The other "assistants" spoke other foreign languages and helped those test-takers that spoke their same language. LEE thought it was strange that the other "assistants" were giving the answers to the other test-takers. LEE threw away the study guide after taking the test. After completing

the process and receiving her license, the DMV cut up LEE's Korean driver's license. The DMV has since moved locations from where it was when LEE obtained her license.

LEE originally stated that no money was paid for EUNYONG's assistance in obtaining the license, but then later admitted to CBP Agent Chung that $200.00 to $300.00 was paid to EUNYONG by LEE's ex-husband in order to have EUNYONG assist with the process. LEE didn't want the FBI Agents to know about her ex-husband's payment because LEE did not want to bring her ex-husband into the situation. LEE stated she did not know the process was illegal. LEE's understanding was that the money was "thank you" money for EUNYONG's assistance for expediting the process since LEE didn't speak very much English. The payment was consistent with Korean custom and not considered a bribe. If LEE hadn't paid, LEE stated she would have had to wait a couple months to complete the process. LEE stated that she would not have attempted to obtain a license if EUNYONG did not assist. LEE did not refer anyone to EUNYONG after LEE got her license because LEE did not know many people and does not have the personality to talk about an issue like this with others. LEE did not know of anyone who got their license using EUNYONG after LEE had obtained hers. LEE stated if she knew the license was illegally obtained that she would have gone to the DMV after getting a SSAN to get a new license. LEE was pulled over in Guam since obtaining the license and appeared in court, but no one questioned her license. LEE was not aware her license lists her as a male.

After LEE had received her license, LEE heard rumors that EUNYONG had been in trouble with the law for illegal activity and was possibly in jail due to EUNYONG's job at the airport. LEE saw EUNYONG at the golf course approximately two months ago.

LEE stated she was a housewife and was raising three kids, including her daughter, HYOJIN SUH, who accompanied LEE on the flight to Honolulu. SUH is the oldest of the three kids. LEE stated she would go back to work once her kids were raised. LEE lives off of the money that her ex-husband sends. The ex-husband sends the money to support their three kids. LEE would not provide the amount of money her ex-husband sends. LEE doesn't have any relatives in Guam or Hawaii, but has close friends in Guam.

LEE was asked if she recognized the name ENA (ph) LEE, but LEE stated she did not know the name.

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription   05/18/2007

      HONG, Dong Pyo, aka JAMES HONG, Date of Birth (DOB) 05/01/1968, of Pacific Towers #A802, Tamuning, Guam, cell phone 671-483-7188, was interviewed in the United States District Courthouse, District of Guam, Hagatna, Guam.  VICTOR YOON, United States District Court interpreter, provided interpretation between Korean and English.  The interview was conducted following HONG's Change of Plea Agreement hearing with the consent of HONG's attorney, WILLIAM L. GAVRAS, telephone number 671-472-2302.  After being advised of the identity of the interviewing agents and the purpose of the interview, HONG provided the following information:

      HONG wanted to get a Guam driver's license but knew that he couldn't obtain one legally as he was out of status and did not possess either a Social Security account number or an Individual Taxpayer Identification Number.  HONG came in contact with his friend, INA LEE, who advised that she could assist HONG in obtaining a Guam driver's license.  HONG knew it would be illegal for him to obtain his Guam driver's license but didn't concern himself with legalities as he was already staying on Guam illegally.

      HONG arrived at the UNIVERSITY OF GUAM to take the written portion of the examination in Korean.  HONG observed five other Korean individuals taking the examination and LEE did confirm that she was helping others obtain their license.

      HONG believes he took the written test during the first week in March, 2004.  He was able to determine that date by examining his Guam driver's license and seeing the issue date of March 10, 2004.  He thinks approximately one week separates the two events.

      On March 10, 2004 met with LEE and a few of the other Korean individuals HONG recognized from the written examination and subsequently received his Guam driver's license.

      HONG insists that he never paid LEE for her assistance as it was all done on the basis of their friendship.

---

Investigation on   03/21/2007   at  Hagatna, Guam

File #  194A-HN-18383 - ʕ↷ᔿ           Date dictated   05/18/2007

by  SA William C. Kline, Jr.:wck✍
    SA J. Alexander Ferguson ✍

*DocumENT 3*

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302 (Rev. 10-6-95)

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription 01/16/2007

HONG, Dong Pyo, aka JAMES HONG, Date of Birth (DOB) 05/01/1968, of Pacific Towers #A802, Tamuning, Guam, cell phone (671)483-7188, was interviewed in the Guam Resident Agency of the FEDERAL BUREAU OF INVESTIGATION (FBI), Mongmong, Guam. HONG had limited English language ability and EUGENE MOON, Language Analyst (LA), Honolulu Office of the FBI telephonically interpreted between Korean and English. HONG was advised of the identities of the interviewing agents and the purpose of the interview. Special Agent (SA) FERGUSON then read aloud an "Advice of Rights" form while HONG followed along on a Korean language "Advice of Rights" form, which he stated he understood, and signed. Thereafter, HONG provided the following information:

HONG was born in Seoul and is a citizen of the Republic of South Korea. HONG currently works as a tour operator at DOLPHIN MARINE SPORTS, Cabras Road, Piti, Guam.

HONG came to Guam in 1998 or 1999 on a general tourist visa waiver and overstayed his waiver. HONG was well aware that he was out of status in Guam and was constantly worried that he would be discovered.

HONG wanted a driver's license to facilitate travel in Guam, but knew that possessing a valid Social Security Number was a requirement. However, HONG's illegal status in Guam prevented him from applying for a Social Security Number. HONG had heard from LEE, Jong Sun and others that it was possible to buy a Guam driver's license. HONG gave LEE $500 to purchase a license, but LEE ran away with the money and never provided a driver's license.

One day, HONG was speaking with CHO, Eun Young, aka LEE, Ina, about his difficulty in obtaining a driver's license; HONG had met CHO through her husband with whom he had worked construction. CHO told HONG that she worked for the GUAM MOTOR VEHICLE DIVISION (GMVD) and a Social Security Number was not a requirement for a Guam driver's license. According to CHO, if HONG had a passport and a valid Korean driver's license, he could just apply and take the written driver's test. HONG previously lost his passport, so he had a temporary passport made at the Korean Consulate in Guam. Also, EOM Sun Woo, had earlier helped HONG obtain a Guam Identification Card. EOM worked at CLUB BOSS in Harmon, Guam.

---

Investigation on 01/12/2007 at Mongmong, Guam

File # 194B-HN-18383 -435

Date dictated _____

SA J. Alexander Ferguson:jaf
by SA William C. Kline Jr.

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

194B-HN-18383

Continuation of FD-302 of ___HONG, Dong Pyo_____ , On 01/12/2007 , Page ___2___

HONG later heard that EOM was arrested by the FBI or INS, but he did not know the reason for the arrest.

CHO handled the majority of the driver's license application procedures on HONG's behalf.  HONG did not complete a driver's license application and believes that CHO did this for him.  HONG took the written driver's test, which CHO administered, at the UNIVERSITY OF GUAM.  At the same time CHO was helping HONG get his license, she was also assisting three or four other Korean males, none of whom HONG knew.  At no time in the process did HONG ever apply for an Individual Taxpayer Identification Number (ITIN).  HONG was not aware that the ITNI 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 was submitted, as being assigned to him, together with his application.  HONG has never applied for any U.S. taxpayer number and has never paid taxes in Guam.

Sometime after taking the written test, CHO called HONG and told him that he could go into GMVD and get his license.  HONG brought his test receipt and a Guam Identification Card and got a driver's license.

HONG did not pay CHO for her assistance because they are friends.  HONG did not know whether anyone else had paid CHO for a license.

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/29/2008

YOUNG MIN KO, Korean male, born in Korea on December 17, 1967, height 171 centimeters, weight 70 kilogram, residing at Sunrise Apartment number 77, Upper Tumon, telephone number 671/688-1171, Guam Driver's License number 1228096843, was interviewed in the presence of JAE SUNG HAN (translator & KO's friend), born April 29, 1966, Social Security Account Number 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, Guam Driver's License Number 1228098996, telephone number 671/687-0466 and STEPHEN W. BASAK, Postal Inspector, United States Postal Inspection Service, at the Guam Visitor's Bureau. After being advised of his constitutional rights in Korean and after being advises of the interviewing Agent/Postal Inspector, KO provided the following information:

KO obtained a Guam Driver's License about 2 or 3 years ago. He paid $120 to $150 for the driver's license. He paid MIKE HONG the money at the HYATT HOTEL, Guam, tennis courts. HONG went to the Guam Department of Motor Vehicles with KO, to obtain the driver's license. HONG told him how to get a Guam Driver's License, at the tennis courts. The Korean Tennis Association of Guam was using the HYATT HOTEL tennis courts at the time. He did not pay ENYOUNG CHO. He obtained the driver's license because he wanted to drive on Guam. Prior to obtaining the Guam Driver's License, he had a Korean driver's license. When he obtained the Guam Driver's License, the Guam Department of Motor Vehicle took his Korean Driver's License. When he obtained the Guam Driver's License, he had to pay Guam Department of Motor Vehicles to obtain the license.

When he took the Guam Driver's License photo, that was the only time he saw CHO at the Department of Motor Vehicles. At the time, he did not know CHO. HONG told him not to ask any questions. After he obtained the license, he found out that CHO helped him out to obtain the license.

He knew he was not suppose to receive a Guam Driver's license this way.

He can read and write English, a little bit. The Chauffeur's test was in English. KIM YOON JUNG, Korean female, helped him pass the test. He thinks that JUNG resides in the Philippines.

| | | | | |
|---|---|---|---|---|
| Investigation on | 2/27/2008 | at | Tumon, Guam | |

File # 194A-HN-18383

Date dictated  2/29/2008

by  SA Kenneth R. Klocke

DOCUMENT 4

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

194A-HN-18383

Continuation of FD-302 of ___Young Min Ko_____ , On _2/27/2008_ , Page ___2___

He has never lived at the address on his Guam Driver's License, P.O. Box 11846.

He was divorced about 5 years ago. He came to Guam on a Tourist Visa. He is not in the process of trying to obtain a Resident Alien Card.

He is employed on a part-time basis by I-TOUR as a bus driver. He receives about $1,500 per month from I-TOUR. His rent is $650 per month. He also earns money by providing tennis lessons.

He does not remember seeing any Individual Tax Identification letters and does not know if he has an Individual Tax Identification letter at his residence.

He graduated from college in Korea and obtained a degree in Tennis.

His passport is at his residence.

KO provided SA Klocke with his Guam Driver's License, which was placed in a 1-A envelope.

FD-302 (Rev 10-6-95)

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription 03/25/2008

      YOUNG MIN KO, previously interviewed, was interviewed at the United States Attorney's Office, at the United States Federal Courthouse, Hagatna, Guam, in the presence of STEVE BASAK, Postal Inspector, United States Postal Inspection Service, Guam. After being introduced to MEENA CHUNG, Korean Linguist, Federal Bureau of Investigation, Honolulu via a telephonic conference call, KO advised that he could understand CHUNG and was able to communicate with CHUNG. KO was advised of the purpose of the interview and KO provided the following information via CHUNG's translation:

      KO was advised by EUN YOUNG CHO that there was a safer way for KO to stay in Guam. CHO asked KO for his passport, which KO provided to CHO. She removed KO's I-94 from his passport and caused it to appear as if KO departed from Guam. At the time he gave CHO the passport, he did not know what she was going to do, he figured it out later, after he was working as a tour guide. He did not pay CHO any money when he provided her with the passport.

      He thought she was an influential person on Guam. HONG, DONG PYO told her that a lot of people obtained Guam Driver's Licences from CHO. He knew CHO was employed at CONTINENTAL AIRLINES.

      His passport was damaged, he washed it in a clothes washing machine.

      He gave CHO tennis lessons for free which may be the reason why he did not pay as much money as others to who obtain a Guam driver's license via CHO.

      In August, 2007, CHO called him and told him to leave Guam. CHO told him that he was on a list of people who obtained a Guam driver's license. CHO told him that he could go thru Saipan to get to Korea. She advised that going to Korea directly would be riskier than going to Saipan or there would be a greater chance of KO being arrested if KO flew directly to Korea. She said to be careful and for him not to get pulled-over on the road because it could cause him to leave Guam.

      A lot of people on Guam who have obtained a driver's licenses through CHO have departed Guam. If he was released from

Investigation on 03/21/2008 at Hagatna, Guam

File # 194A-HN-18383

Date dictated 03/25/2008

SA Kenneth R. Klocke

*DOCUMENT 5*

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

194A-HN-18383

Continuation of FD-302 of    Young Min Ko                                                                , On 03/21/2008 , Page    2

incarceration he thought he could locate some Koreans on Guam who
illegally obtained Guam Driver's licenses.

He was aware that HONG, DONG PYO, Korean male, who helped
KO obtain a Guam Driver's license and YOON JUNK KIM, Korean female,
who he provided tennis lessons, obtained a Guam driver's license
through CHO and have deported Guam.

*#2*

He is not aware of any Koreans involved with forced
prostitution.  He is not aware of any information relating to
terrorism, intelligence gathering or other criminal activity.

He likes Guam and that is why he did not leave.

CHO did not tell him to find someone to marry in order to
stay on Guam.  She did not tell him to get rid of his Guam Driver's
License.

Everyone who obtained a Guam Driver's Licences from CHO
knew it was a crime to obtain the license, but probably did not
understand it was a big crime.

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    04/02/2008

        SANG HO KIM, previously interviewed, was interviewed in
the presence of PETER KANG, unemployed, telephone number (671) 888-
8812, KIM's friend, who acted as an interpreter, as needed, at the
Federal Detention Center, Hagatna, Guam.  After being advised that
KIM's attorney, SAM TEKER, gave Special Agent (SA) Kenneth R.
Klocke permission to interview KIM and after being advised that
TEKER told SA Klocke that TEKER was going to contact KIM at the
Federal Detention Center on April 2, 2008, at 1330, regarding KIM's
plea agreement, KIM provided the following information:

        EUN YOUNG CHO called KIM's cellular phone, number (671)
688-2280, about 2 weeks before KIM was arrested.  Immediately prior
to CHO's call, KIM received a call from KANG, HUN SEOG.  KANG told
KIM to leave Guam.  KIM asked KANG why KIM needed to leave Guam.
KIM told KANG that KIM was married and that KIM did not need to
leave Guam.  KANG told KIM that KIM should not carry KIM's Guam
Driver's.  KANG told KIM that KIM should speak with CHO and the
conversation ended.  CHO immediately contacted KIM and CHO told KIM
that if KIM was going to get a green card, she could have changed
his Social Security Account Number on KIM's Guam Driver's license.

        During the cellular call, two weeks prior to KIM's
arrest, CHO told him to quit his job, but CHO did not tell him to
leave Guam.  CHO told him to lie to the Federal Bureau of
Investigation (FBI) if KIM was arrested.  CHO told him to tell the
FBI that they actually met at the bowling ally.  He actually met CHO through
JANG, Korean female, who is the owner of the BEVERLY HILLS GIFT
SHOP.  CHO came to the gift shop and told KIM that if KIM had a
Korean driver's license and a passport, CHO could obtain a Guam
Driver's license for KIM for $350.  JANG paid CHO $300 for the
driver's license, which JANG withheld from KIM's pay.  KIM was paid
in cash for working at the gift shop.  CHO told KIM not to mention
JANG to the FBI because JANG did a favor for KIM and JANG helped
KIM out regarding the driver's license.  CHO told him not to call
CHO on her cellular telephone because the FBI could be monitoring
her celular phone calls, but CHO advised that KIM could call her on
her home telephone.  CHO's home number was stored on his cellular
phone.  CHO also reminded KIM that KIM owed CHO $50.

        JANG and CHO knew each other and may be friends.  JANG
drove a black BMW.

Investigation on    04/02/2008    at  Hagatna, Guam

File #   194A-HN-18383

Date dictated   04/02/2008

by   SA Kenneth R. Klocke

*DOCUMENT 6*

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

194A-HN-18383

Continuation of FD-302 of ___Sang Ho Kim_____ , On 04/02/2008 , Page __2__

     While incarcerated, YEONG BEOM GIM, told KIM that GIM contacted CHO prior to going to the airport.  GIM did not tell KIM that CHO told GIM to leave Guam.  KIM had limited conversations with GIM.  KIM did translate English to Korean when GIM was booked into the Federal Detention Center.

     The general gossip that KIM has heard was that CHO had contacted other Koreans who obtained Guam Driver's licenses from CHO and CHO told them to leave Guam.  KIM advised that the Koreans may be reluctant to provided information because it could negatively affect other family members.

     KIM was willing to provided additional information regarding the Koreans on Guam who obtained Guam Driver's licenses from CHO, but KIM wanted to speak with his attorney prior to providing additional information.

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription     04/22/2008

SANG HO KIM, previously interviewed, was interviewed at the Federal Detention Center (FDC), Hagatna, Guam. KIM provided the following information:

JUNG SOO JANG was dating KYOUNG KWA BAEK, Korean female. While JANG was incarcerated in the FDC, JANG called BAEK at (671) 888-1111. This number was JANG's cellular telephone number. JANG called BAEK everyday when JANG was incarcerated. BAEK was employed at BEVERLY HILLS GIFT SHOP, Tamuning, but she quit. She has brown freckles on her face and has a slight build.

IN HWAN CHO, Korean male, was formerly employed at the same location where KIM was arrested. CHO went into hiding and was residing with CHO's mother and sister. CHO's mother and sister maybe on Guam illegally as well. They were residing on the 1st floor of a 3 store apartment unit. The apartment unit is located off Marine Corps Drive, near the old metal building (cinema written on the front) and also next to a SUBWAY sandwich shop. CHO does not own a vehicle.

When KIM obtained his Guam Driver's License, First Name Unknown (FNU), Last Name Unknown (LNU), Korean male, obtained a Guam Driver's License contemporaneously. FNU LNU worked at DIVE CITY, which is located on Marine Corps Drive, Agana, Guam. KIM saw FNU LNU with INA LEE at the Guam Department of Motor Vehicles.

SUNG HUN KANG, maybe the same person, with the last name of KANG, who was the Manager of the BEVERLY HILLS GIFT SHOP, where KIM was formerly employed. The Manager, Mr. KANG, was the person who called KIM and told KIM to destroy or get rid of KIM's Guam Driver's License. KANG obtained a new Guam Driver's License with KANG's Social Security Account Number on the license. KANG married a United States citizen. MI JAE JANG, Korean female, is the owner of the BEVERLY HILLS GIFT SHOP.

There were two Korean males employed at the A SHOP (Korean store), located in the strip mall near FIRST HAWAIIAN BANK, Tamuning. One of the males is YEON SU KIM and YEON SU KIM has a Guam Driver's License. Both Korean males are on Guam illegally.

| | | |
|---|---|---|
| Investigation on | 4/21/2008 | at Hagatna, Guam |
| File # 194A-HN-18383- 16-1 | | Date dictated 4/22/2008 |
| by SA Kenneth R. Klocke | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

194A-HN-18383

KI CHEOL HAN, Korean male, was a hair designer, but KIM did not know where HAN was employed.

 **U.S. Department of Justice**

 **COPY**

RECEIVED

MAY 12 2008

FEDERAL
PUBLIC DEFENDER

*United States Attorney*
*District of Guam*

Sirena Plaza, Suite 500          (671) 472-7332
108 Hernan Cortez Avenue     FAX: (671) 472-7334
Hagatna, Guam 96910
May 12, 2008

Richard Arens
Federal Public Defenders Office
Suite 501, FHB Bldg.
400 Route 8
Maite, Guam 96910

    Re: <u>United States v. Eun Young Lee, Cr. No. 08-00022</u>

Dear Richard,

    I am enclosing the applicable discovery in this matter. We have subpoened the actual I-94 itself, but it hasn't come yet, so I'll forward a copy when it does. Enclosed are two interviews of Young Min Ko, the TECS printouts on Ko, and the passenger manifest for 2/26/04, which shows Ko was not on the plane.

    Continental's procedure for processing the I-94s of departing aliens is to check in the alien at the ticket counter, issue a boarding pass, take the I-94 departure form out of the alien's passport, staple it onto the boarding pass, and give it back to the alien. The I-94 is removed by gate agents at the time the alien presents his boarding pass to board the plane. The I-94s are put into a separate box and given to CPB.

    As you know, Young Min Ko is still on Guam. The TECS printout showed he arrived 2/14/04 and left 2/26/04, on the Continental flight to Japan. In fact, as the passenger manifest shows, he was not on that flight. Your client filed his I-94 with the others being collected at the gate, something, obviously, which only a Continental ticket agent would be able to do.

                         Sincerely,

                         LEONARDO M. RAPADAS
                         United States Attorney
                         Districts of Guam and the NMI

By _____
           KARON V. JOHNSON
           Assistant United States Attorney

FD-302 (Rev. 10-6-95)

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/29/2008

YOUNG MIN KO, Korean male, born in Korea on December 17, 1967, height 171 centimeters, weight 70 kilogram, residing at Sunrise Apartment number 77, Upper Tumon, telephone number 671/688-1171, Guam Driver's License number 1228096843, was interviewed in the presence of JAE SUNG HAN (translator & KO's friend), born April 29, 1966, Social Security Account Number 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, Guam Driver's License Number 1228098996, telephone number 671/687-0466 and STEPHEN W. BASAK, Postal Inspector, United States Postal Inspection Service, at the Guam Visitor's Bureau.  After being advised of his constitutional rights in Korean and after being advises of the interviewing Agent/Postal Inspector, KO provided the following information:

KO obtained a Guam Driver's License about 2 or 3 years ago.  He paid $120 to $150 for the driver's license.  He paid MIKE HONG the money at the HYATT HOTEL, Guam, tennis courts.  HONG went to the Guam Department of Motor Vehicles with KO, to obtain the driver's license.  HONG told him how to get a Guam Driver's License, at the tennis courts.  The Korean Tennis Association of Guam was using the HYATT HOTEL tennis courts at the time.  He did not pay ENYOUNG CHO.  He obtained the driver's license because he wanted to drive on Guam.  Prior to obtaining the Guam Driver's License, he had a Korean driver's license.  When he obtained the Guam Driver's License, the Guam Department of Motor Vehicle took his Korean Driver's License.  When he obtained the Guam Driver's License, he had to pay Guam Department of Motor Vehicles to obtain the license.

When he took the Guam Driver's License photo, that was the only time he saw CHO at the Department of Motor Vehicles.  At the time, he did not know CHO.  HONG told him not to ask any questions.  After he obtained the license, he found out that CHO helped him out to obtain the license.

He knew he was not suppose to receive a Guam Driver's license this way.

He can read and write English, a little bit.  The Chauffeur's test was in English.  KIM YOON JUNG, Korean female, helped him pass the test  He thinks that JUNG resides in the Philippines.

---

Investigation on   2/27/2008          at   Tumon, Guam

File #  194A-HN-18383

Date dictated   2/29/2008

by   SA Kenneth R. Klocke

---

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

194A-HN-18383

He has never lived at the address on his Guam Driver's License, P.O. Box 11846.

He was divorced about 5 years ago. He came to Guam on a Tourist Visa. He is not in the process of trying to obtain a Resident Alien Card.

He is employed on a part-time basis by I-TOUR as a bus driver. He receives about $1,500 per month from I-TOUR. His rent is $650 per month. He also earns money by providing tennis lessons.

He does not remember seeing any Individual Tax Identification letters and does not know if he has an Individual Tax Identification letter at his residence.

He graduated from college in Korea and obtained a degree in Tennis.

His passport is at his residence.

KO provided SA Klocke with his Guam Driver's License, which was placed in a 1-A envelope.



FD-302 (Rev 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___03/25/2008___

YOUNG MIN KO, previously interviewed, was interviewed at the United States Attorney's Office, at the United States Federal Courthouse, Hagatna, Guam, in the presence of STEVE BASAK, Postal Inspector, United States Postal Inspection Service, Guam. After being introduced to MEENA CHUNG, Korean Linguist, Federal Bureau of Investigation, Honolulu via a telephonic conference call, KO advised that he could understand CHUNG and was able to communicate with CHUNG. KO was advised of the purpose of the interview and KO provided the following information via CHUNG's translation:

KO was advised by EUN YOUNG CHO that there was a safer way for KO to stay in Guam. CHO asked KO for his passport, which KO provided to CHO. She removed KO's I-94 from his passport and caused it to appear as if KO departed from Guam. At the time he gave CHO the passport, he did not know what she was going to do, he figured it out later, after he was working as a tour guide. He did not pay CHO any money when he provided her with the passport.

He thought she was an influential person on Guam. HONG, DONG PYO told her that a lot of people obtained Guam Driver's Licences from CHO. He knew CHO was employed at CONTINENTAL AIRLINES.

His passport was damaged, he washed it in a clothes washing machine.

He gave CHO tennis lessons for free which may be the reason why he did not pay as much money as others to who obtain a Guam driver's license via CHO.

In August, 2007, CHO called him and told him to leave Guam. CHO told him that he was on a list of people who obtained a Guam driver's license. CHO told him that he could go thru Saipan to get to Korea. She advised that going to Korea directly would be riskier than going to Saipan or there would be a greater chance of KO being arrested if KO flew directly to Korea. She said to be careful and for him not to get pulled-over on the road because it could cause him to leave Guam.

A lot of people on Guam who have obtained a driver's licenses through CHO have departed Guam. If he was released from

---

vestigation on ___03/21/2008___ at __Hagatna, Guam__

e # __194A-HN-18383__

Date dictated ___03/25/2008___

SA Kenneth R. Klocke

document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned its contents are not to be distributed outside

194A-HN-18383

Continuation of FD-302 of   Young Min Ko                                   , On 03/21/2008 , Page    2

incarceration he thought he could locate some Koreans on Guam who
illegally obtained Guam Driver's licenses.

He was aware that HONG, DONG PYO, Korean male, who helped
KO obtain a Guam Driver's license and YOON JUNK KIM, Korean female,
who he provided tennis lessons, obtained a Guam driver's license
through CHO and have deported Guam.

He is not aware of any Koreans involved with forced
prostitution.  He is not aware of any information relating to
terrorism, intelligence gathering or other criminal activity.

He likes Guam and that is why he did not leave.

CHO did not tell him to find someone to marry in order to
stay on Guam.  She did not tell him to get rid of his Guam Driver's
License.

Everyone who obtained a Guam Driver's Licences from CHO
knew it was a crime to obtain the license, but probably did not
understand it was a big crime.