EYLeetrialmemo8

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. 08-00004 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **UNITED STATES MEMORANDUM** |
| ) | **AT THE CONCLUSION OF THE** |
| EUN YOUNG LEE, ) | **GOVERNMENT'S CASE** |
|     aka Eun Young Cho, ) | |
|     aka Ina Lee, ) | |
| MARCELINO J. LASERNA, ) | |
| JOHN W.C. DUENAS, ) | |
| MARY C. GARCIA, ) | |
| JOSEPH PANGELINAN, ) | |
| FRANCISCO SN KAWAMOTO, and ) | |
| MARGARET B. UNTALAN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I. CONSPIRACY

Each of the defendants is charged with individually conspiring with Ina Lee to unlawfully produce Guam driver's licenses. The court has conditionally allowed the admission of statements made by co-conspirators in furtherance of these conspiracies pursuant to FRE Federal Rule of Evidence 801(d)(2). Before statements of coconspirators may be considered by the jury, the court must determine there is sufficient evidence to establish, by a preponderance of the evidence, that a conspiracy existed and that the defendant was involved in it. Bourjaily v. United States, 483 U.S. 171 (1987). United States v. Layton, 720 F.2d 548, 555 (9th Cir. 1983)

(*Layton I*), held that

> "Before admitting a statement of a co-conspirator into evidence against a defendant, the court must have independent evidence of the conspiracy and of the defendant's connection to it, and must conclude that the statement was made both during and in furtherance of the conspiracy."

The government must "establish a prima facie case through the introduction of substantial independent evidence other than the contested hearsay." United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981). Once a conspiracy has been proven, only "slight evidence" is necessary to connect the defendant with the conspiracy. Id., citing United States v. Weaver, 594 F.2d 1272, 1274 (9th Cir. 1979).

Three of the government witnesses, Young Nam Kim, Deuk Soon Choi, and Jin Woo Park, knew defendant personally and arranged the purchase of their licenses directly with her. Others, however, were introduced through friends, whose statements were offered as statements of co-conspirators. Following is a summary of the co-conspirator statements in furtherance of a conspiracy, which are at issue.

1) Mi Young Im. Witness Jae Hoan Seok, who had a student visa to attend UOG, told Im he wanted to get a Guam driver's license. Im said "there is a way, " and told him to bring his Korean passport and driver's license to a meeting with Lee at California Mart. Seok went on to pay Lee $800 at the airport, and meet her at MVD, where the licencing procedure was started.

2. Seung Pill Choi. Witness Jung Soo Yang told his friend Choi he wanted to get license. Choi got back to him, and told him there "was a way" if he had a Korean driver's license, and it would cost him $200. He gave Choi $200. Some time later, Choi drove him to the MVD, where he met Lee, and the application process began.

3. Young Soo Lee. Witness Myung Sug Kim was working illegally on construction projects such as the Nikko Hotel wedding chapel. He told his friend Lee that he wanted a license, and Lee replied it would be easy if Kim had a Korean license. Lee owed Kim $500 from work, so they agreed that Lee would repay his debt by giving the $500 to the person from whom

-2-

Kim would obtain his license.

   4. <u>Mr. Suh</u>.  Witness Dong Sik Jung came to Guam to invest in a business with his friend Suh, who lived at the Pia Marine.  Suh told Jung that his wife, Ji Young Lee, was getting a license, and he could arrange for Jung to get one also.  Jung gave Suh $1,000.  Suh drove Jung and Ji Young Lee to the MVD, where they met Lee and proceeded with the applications.

   5. <u>Mrs. Jang</u>.  Witness Sang Ho Kim worked illegally at the Beverly Hills Gift Shop owned by a Mrs. Jang, and managed by a Mr. Kang.  Both Jang and Kang told Kim he should have a Guam driver's license, and they knew someone who could help.  Ms. Kang told Kim she had contacted defendant Lee and negotiated a price of $350, which was to be taken out of Kim's salary.  Later Lee picked Kim up at the gift shop parking lot and took him to MVD for the application process.

   6. <u>Mrs. Park</u>.  Witness Ki Ja Lee testified she was on Guam illegally, and had enrolled her son in a local school.  The mother of one of her son's friends, a Mrs. Park, saw her walking to school and asked why Lee didn't have a license.  Mrs. Park told her "there was a way" to get a Guam license and she would arrange it.  Later Mrs. Park dropper her off at a coffee shop, where Kil Ja Lee met the defendant Lee.

   7. <u>Dong Pyo Hong</u>.  Witness Young Min Ko taught tennis at the Hyatt, and wanted a license.  His friend Dong Pyo Hong said "there was a way," that he was going to get a license himself, and that for $150 Ko could get a license also.  Ko gave Hong $250 and his Korean license.  Later, he and Hong went to the MVD, where they met defendant Lee.

A.  <u>Existence of a Conspiracy</u>

Following is the independent evidence which the government has proved concerning the existence of a conspiracy.

First, an agreement to illegally produce a driver's license occurred every time Lee handed an application to an examiner, and the examiner accepted it, knowing it was not supported by the actual ITIN document. By passing the application through the window to the examiner, Lee was

-3-

making a tacit request that he/she accept it. Every time he/she accepted an application without the necessary ITIN document, the examiner was agreeing to produce a driver's license unlawfully.

Second, as a practical matter, the evidence demonstrates that the agreement between Lee and the defendant examiners occurred long before she took her clients up to the window. Even before she walked into the MVD, she knew her clients' applications would be accepted without scrutiny. This logically follows from the following facts:

1) Over 50 Korean nationals illegally obtained Guam licenses in 2004 and 2005 from the Guam MVD.

2) Defendant Lee was not an employee of MVD. Hence, she did not have access to the MVD computers, nor was she able to create a license file for any of these Koreans. This had to be done by someone who was employed with MVD and had access to the MVD computer.

3) Lee was in the business of selling Guam driver's licenses, and this business was open and notorious. She had a reputation for consistently delivering the promised "product."

4) Lee never expressed any hesitation or doubts to the government witnesses about whether she could secure them a license. The only thing she would mention to the licensees was the written test, as if the application process itself was a *fait accompli*.

5) Lee took the witnesses' money in advance. She was so confident about her ability to secure a Guam driver's license that she treated it as a routine sale. Taking the witnesses' money in advance is evidence of her confidence that her fraudulent applications would be accepted without demur at MVD.

6) MVD policy required that an examiner see the actual SS card, or ITIN letter of the applicant. The examiner was required to write the number across the top of the application, thereby certifying that he had seen the actual supporting document. These defendant examiners have identified their handwriting concerning the charged overt acts and counts.

7) The defendant examiners insisted to FBI agents that they knew what the original ITIN looked like and they never accepted copies. But this is a lie: such a document did not exist anywhere on the Earth, because the IRS had never issued ITINs to the Koreans named in this indictment.

8). The defendant examiners authenticated these applications without the correct supporting documents, knowing it was unlawful to do so. First, they knew the application contained false information: had the ITIN really belonged to the applicant, he would have had it with him. If a person is legally entitled to a social security number or ITIN, he will have the actual card issued by the agency, or he will be able to obtain a certified letter from the issuing agency attesting that this number was his. The only reason a person would not possess such a document is because the number is not his. Second, defendants knew it was a violation of MVD policy to accept an application without the actual supporting documents.

9) Second, they knew they were in violation of MVD policy to accept an application without seeing the original card/letter. The defendant examiners insisted to FBI agents that the MVD procedure was clear: they had to see the original ITIN itself, they knew what an original looked like, and they denied ever accepting anything else from anyone. But the government had proved this was untrue.

10). Marcelino Laserna admitted that he had accorded Lee preferential treatment. He did not require Lee to produce the actual ITIN documents for her clients, but he enforced the rule against every other applicant.

The existence of a criminal conspiracy may be proven by circumstantial as well as by direct evidence, if it affords a logical and reasonable inference as to the ultimate facts sought to prove the essential elements. 16 Am. Jur. 2d Conspiracy § 41. Proof by circumstantial evidence is typically the only way to prove a conspiracy case. United States v. Cole, 448 F.2d 425 (9th Cir. 1971). There is sufficient evidence to prove a conspiracy between Lee and each of the defendant examiners, beyond a reasonable doubt. Thus, the statements of the co-conspirators

-5-

should be admitted.

Once a conspiracy is proved, very weak evidence is sufficient to convict the defendant of conspiracy, based upon the totality of the circumstances. United States v. Mares, 940 F.2d 455 (9th Cir. 1991).

## II. PRODUCTION OF DRIVER'S LICENSES

A driver's license is produced in several stages, each of which must be satisfied before a license can be issued lawfully. One must make a written application for a license, which application must be fully truthful and correct; one must pass a variety of tests, including eye exams, written and road tests; one must meet certain obvious physical requirements, such as the use of one's limbs; one must have one's actual photograph on the license associated with one's true name; and one must pay a fee. All these steps are necessary in the lawful production of a driver's license. If any one of these steps is "fixed," so that the applicant achieves it unlawfully, the license has been unlawfully produced. The manner in which licenses can be unlawfully produced is limited only by the human imagination. An employee may be falsely certifying an applicant has passed a test, when he has not; an employee may be falsely substituting a photograph that does not belong to the person named on the license, thus creating a powerful false identification document. Another may be issuing licenses to his friends for free. Whatever the unlawful act, Congress has made it clear in the definition of "produce," at 18 U.S.C. § 1028d)(9) and its legislative history, H.R. REP. 97-802, 1982 U.S.C.C.A.N. 3519, that the statute encompasses any unlawful act which results in the unlawful issuance of a driver's license.

In this case, defendants are charged with conspiring together to unlawfully produce driver's licenses by "fixing" the first and most important step in the process, the acceptance of the application without first having seen the required supporting documents. In particular, the intentional waiver of a valid ITIN for Lee's clients was unlawful both as a violation of MVD's rules and regulations, and as a violation of Guam statute, 16 G.C.A. § 3109.

It is irrelevant that, after the application was authenticated, there were other required

-6-

stages to be completed  As Congress made clear, § 1028(a)(1) extends to any aspect of producing a license, including making, manufacturing, issuing and publishing.

MVD procedure provided that an application could not be accepted unless it was supported by valid documentation. This authentication procedure occurred only once, at the beginning of the process, and was absolutely necessary to the issuance of a license. It is irrelevant whether there was fraud concerning any other stage of the process. The issuance of a license depended on whether the application was accepted, which in turn depended on whether the application's supporting documents had been authenticated.

### III.  AIDING AND ABETTING IN THE CREATION OF A FILE

In Counts I - VII, defendants are charged with conspiring with Ina Lee to commit the fraudulent production of driver's licenses. The overt acts in these counts charge that the defendants created applicant files in the MVD computer which they knew contained false and fraudulent ITINs. Defendants are charged in the substantive counts with unlawfully producing driver's licenses. Both the conspiracy and substantive counts allege a violation of 18 U.S.C. § 2, by aiding and abetting in these offenses.

As discussed above, the lawful issuance of a driver's license involves many stages. Because the defendants are charged with aiding and abetting in the production of illegal Guam licenses, it is not necessary that they each actually performed the unlawful stage themselves, but rather that they caused it to be done. The case cited in the government's initial trial memorandum, United States v. Rashwan, 328 F.3d 160 (4th Cir. 2003) is directly on point. There, the defendant was convicted of a violation of 18 U.S.C. 1028(a)(1) for unlawfully producing a Virginia driver's license by submitting false information in his application. On appeal, he contended that he had not actually "produced" the license. The Fourth Circuit disagreed. "Defendant cannot insulate himself from punishment by manipulating innocent third parties to perform acts on his behalf that would be illegal if he performed them himself." Id. at 165.

-7-

Case 1:08-cr-00004    Document 289    Filed 06/27/2008    Page 7 of 9

1  In this case, the government did not allege, and does not have to prove, that the
2  defendants actually entered the false applications into the MVD computer with their own fingers.
3  Whether they actually input the application data themselves, or whether they put the applications
4  aside for an innocent and unsuspecting party to enter, is irrelevant to this charge. In either event,
5  the defendants unlawfully created the files.

6  It is well settled that a "person who causes the commission of an offense is punishable as
7  a principal even though the person who completes the wrongful act violates no criminal statute
8  because of lack of criminal intent or capacity. Section 2(b) punishes the individual who *causes*
9  a criminal act, because no crime would take place without his or her participation." United
10 States v. Causey, 835 F.2d 1289, 1292 (9th Cir. 1987). "[A] defendant may be convicted as a
11 principal even if he uses another person as an agent to commit the crime." United States v.
12 Mohrbacher, 182 F.3d 1041, 1050-51 (9th Cir. 1999).

13 An analogous line of opinions, involving the same reasoning, can be found in cases
14 dealing with false entries in bank records, in violation of 18 U.S.C. § 1005. A typical case is
15 United States v. Wolf, 820 F.2d 1499 (9th Cir. 1987), involving false entries created by one of the
16 bank's directors. On appeal, Wolf argued there was insufficient evidence to support his
17 conviction. The court noted "The record also supports the jury's determination that Wolf knew
18 the entries were false and caused them to be made. The jury need not find that Wolf himself
19 made the entry in the bank's books; it suffices that he set into motion management actions that
20 necessarily caused clerks to make the false entries. Id. at 1504.

21 In summary, if any of the defendants knowingly authenticated an application when they
22 //
23 //
24 //
25 //
26 //
27
28

-8-

new was unlawful to do so, they cannot insulate themselves from liability to contending that some other, innocent party, actually typed the data into the computer.

Respectfully submitted this  27th  day of June, 2008.

                                                               LEONARDO M. RAPADAS
                                                               United States Attorney
                                                                Districts of Guam and NMI

By:    /s/ Karon V. Johnson
           KARON V. JOHNSON
           Assistant U.S. Attorney

-9-